



**FILED**
**Feb 13, 2020**
**09:40 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Nesreen Boutros | ) | Docket No. 2016-06-0418 |
| | ) | |
| v. | ) | State File No. 32833-2015 |
| | ) | |
| Amazon, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Kenneth M. Switzer, Chief Judge | ) | |

---

### Affirmed and Certified as Final

---

The employee alleged she suffered work-related injuries to her neck, right arm, and shoulder while lifting a heavy box. She was evaluated by several physicians and eventually released to return to work with no permanent medical impairment. Following a trial, the court awarded temporary disability benefits and future medical benefits but declined to award any permanent disability benefits. The employer has appealed. We affirm the trial court's order and certify it as final.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge David F. Hensley and Judge Pele I. Godkin joined.

W. Troy Hart and Tiffany Sherrill, Knoxville, Tennessee, for the employer-appellant, Amazon

Nesreen Boutros, Mt. Juliet, Tennessee, employee-appellee, pro se

### Factual and Procedural Background

Nesreen Boutros ("Employee"), a resident of Wilson County, Tennessee, alleged that she suffered injuries to her neck, right shoulder, and right arm on April 23, 2015, while working as a package handler for Amazon ("Employer"). Employee described placing a heavy box on a conveyor belt and feeling a "pop," which she testified resulted in burning pain in her neck and right arm. She presented to Employer's on-site medical clinic and received a panel of medical providers from which she selected an urgent care facility. After two visits at the urgent care clinic, Employee was referred to an orthopedic physician and was seen by Dr. Kyle Joyner, an orthopedic surgeon. Dr. Joyner opined

1

that Employee's problems were muscular in nature rather than orthopedic, and he recommended referral to a physiatrist, stating in his report that Employee "does not need to follow up with me."

Employer arranged for Employee to begin treating with Dr. Jeffrey Hazlewood, a physiatrist and pain management specialist. Dr. Hazlewood's records reflect ongoing complaints of right shoulder and arm pain, which he consistently noted were out of proportion to any objective findings. An MRI of Employee's cervical spine revealed a disc protrusion at C6-7, but Dr. Hazlewood observed that this finding did not correlate with Employee's complaints either objectively or subjectively. After failing to appear for two appointments and appearing late for a third, Dr. Hazlewood discharged Employee from his care, observing that her failure to keep her appointments suggested that her symptoms were not as severe as she reported. He released her at maximum medical improvement as a result of what he deemed to be noncompliance.

Following an expedited hearing, Employer provided another medical panel from which Employee selected Dr. Victor Isaac. After multiple visits, and after Employee expressed dissatisfaction with his care, Dr. Isaac referred Employee to Dr. Damon Petty, who saw Employee once. Dr. Petty recommended an injection, which Employee declined. In his April 23, 2018 report, Dr. Petty concluded "symptom magnification has played a large role in the presentation here and the long duration of treatment without success." Thereafter, Employee returned to Dr. Isaac, who prescribed physical therapy. Employee attended several therapy visits, but declined additional therapy because she believed it worsened her pain. Eventually, a nurse practitioner working under Dr. Isaac's supervision placed Employee at maximum medical improvement.

In preparation for the compensation hearing, Employee submitted several medical reports that were admitted into evidence by agreement. One such report, apparently from a Dr. Fahid, included a permanent medical impairment rating of 30%.[1] A second such report, signed by Dr. Pradumosa Singh on August 13, 2019, also included an impairment rating of 30%.[2] For its part, Employer relied on the records and medical opinions of Dr. Joyner, Dr. Isaac, Dr. Petty, and Dr. Hazlewood.

Following a trial, during which Employee was the only witness to provide live testimony, the trial court concluded Employee was entitled to temporary disability benefits and future medical benefits, but declined to award any permanent disability benefits. In reaching its conclusions, the trial court relied on several opinions expressed by Dr. Isaac. First, Dr. Isaac concluded Employee was unable to work from April 23, 2015 until January 2, 2018. Second, Dr. Isaac signed a Final Medical Report (Form C-

[1] The Final Medical Report (Form C-30A) admitted into evidence as Exhibit 2 is partially illegible.

[2] Dr. Singh also signed a Form C-30A dated February 26, 2019, which included an impairment rating of 75%, apparently assigned to the right arm.

2

30A) indicating that Employee may need future medical treatment as a result of her work injury. Third, Dr. Isaac concluded Employee's work injury did not result in any permanent medical impairment. The trial court further noted that Dr. Hazlewood had issued a final medical report indicating Employee retained no permanent medical impairment associated with the work accident. Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2019). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2019).

## Analysis

In its brief on appeal, Employer raises three issues, which we have restated as follows: (1) whether the trial court "abused its discretion in awarding temporary total disability benefits"; (2) whether the trial court erred in awarding temporary disability benefits covering a period of time after Employee had reached maximum medical improvement; and (3) whether Employee's alleged medical noncompliance prevents her from receiving any workers' compensation benefits.

To qualify for temporary disability benefits, an employee must establish: (1) that he or she became disabled from working due to a compensable injury; (2) that there is a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015) (citing *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978)). An employee has the burden of establishing his or her entitlement to temporary disability benefits by a preponderance of the evidence. *See* Tenn. Code Ann. § 50-6-239(c)(6).

As a preliminary matter, we note that the awarding of temporary disability benefits is not within a trial court's "discretion," as suggested by Employer, and the standard of review on appeal is not an abuse of discretion standard. Instead, consistent with Tennessee Code Annotated section 50-6-239(c)(6), an employee must prove the essential elements of his or her claim at a compensation hearing by a preponderance of the evidence, and we will presume a trial court's factual findings are correct unless the preponderance of the evidence is otherwise. *Riley v. Group Elec.*, No. 2015-06-0886, 2016 TN Wrk. Comp. App. Bd. LEXIS 26, at *10-11 (Tenn. Workers' Comp. App. Bd. July 5, 2016).

In the present case, the trial court concluded that Employee suffered a compensable accident that caused an inability to work. The trial court relied on the records and opinions expressed by an authorized panel physician, Dr. Isaac, who noted Employee was unable to work from the date of the injury until January 2, 2018. The court deducted from its award of temporary disability benefits amounts representing the time during which Employee worked, based on the evidence presented during the compensation hearing. In its brief, Employer asserts that Dr. Isaac's opinions were "not credible" because he "did not have the needed information to determine whether restrictions were appropriate." Yet, Dr. Isaac's records, including the Final Medical Report forms, were offered into evidence by Employer and were relied on by Employer in support of its defenses. It is undisputed that Dr. Isaac's December 6, 2018 Final Medical Report indicated Employee was unable to work from the date of the injury until January 2, 2018. It is incongruous for a party to offer medical documentation into evidence and rely on certain portions of the documentation, then argue that the remainder of the documentation is not credible.

It is well-settled that a trial court can weigh expert evidence and accept the opinions of one expert over those of another. *See, e.g.*, *Bass v. The Home Depot U.S.A., Inc.*, No. 2016-06-1038, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (Tenn. Workers' Comp. App. Bd. May 26, 2017). We afford a presumption of correctness to a trial court's determination of which expert opinions to accept, and we will reverse or modify such a determination only if the preponderance of the evidence is otherwise. In this case, we cannot conclude the evidence preponderates against the trial court's decision to accept the opinions expressed by Dr. Isaac that supported the trial court's award of temporary disability benefits.

Next, Employer asserts that some portion of the award of temporary benefits represented a period of time after Employee had reached maximum medical improvement. Because the attainment of maximum medical improvement or the ability to return to work terminates an employee's entitlement to temporary disability benefits, *see Simpson*, 564 S.W.2d at 955, Employer argues Employee is not entitled to temporary benefits after the earlier of those dates. However, in its brief, Employer acknowledged that "[Employee] was placed at maximum medical improvement ("MMI") multiple times

by multiple providers including authorized treating physicians." Dr. Isaac, who began treating Employee in December 2016, indicated in his November 8, 2018 office note that Employee would reach maximum medical improvement after he had administered an epidural steroid injection. He then completed a Final Medical Report dated December 6, 2018, indicating Employee was unable to work from the date of the injury through January 2, 2018, when he released her to return to work with restrictions. That is the date used by the trial court to determine the award of temporary benefits, and we cannot conclude the trial court erred in selecting that date based on the proof presented during the compensation hearing.

Finally, Employer argues the trial court erred in awarding compensation because Employee has been medically noncompliant throughout the course of her treatment. Although Employer raised issues in the trial court concerning Employee's alleged medical noncompliance with respect to whether she was entitled to additional medical care and/or permanent disability benefits, Employer did not assert that her noncompliance was a sufficient basis to deny her temporary disability benefits. Rather, Employer argued that Employee presented insufficient and vague proof regarding her alleged entitlement to temporary disability benefits and that such proof could not form the basis of an award of temporary benefits. Where issues and arguments are not raised in the trial court, we will not address them for the first time on appeal. *See Cartwright v. Jackson Capital Partners, Ltd. P'ship*, 478 S.W.3d 596, 614 (Tenn. Ct. App. 2015) ("[A]ppellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.").

Even if we were to conclude Employer properly raised the issue of whether Employee's alleged noncompliance with medical treatment should bar her recovery of temporary disability benefits in the trial court, we find no error on the part of the trial court. Employer points out numerous instances in which Employee declined certain treatments for various reasons. Employee explained her reasons for missing or being late to appointments, her dissatisfaction with her physical therapy, and her reasons for declining invasive treatment, including epidural steroid injections. The trial court heard her testimony and found her explanations to be reasonable and her testimony to be credible. As we have previously observed, "[w]hen the trial court has heard in-court testimony, considerable deference must be afforded in reviewing the trial court's findings of credibility and assessment of the weight to be given to that testimony." *Love v. Delta Faucet Co.*, No. 2015-07-0195, 2016 TN Wrk. Comp. App. Bd. LEXIS 45, at *17 (Tenn. Workers' Comp. App. Bd. Sept. 19, 2016) (citing *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008)).

Employee testified that she failed to attend or was late to medical appointments because her prescribed medications made her drowsy and unable to drive safely. She testified that she declined an injection because she would not be able to use her arm to drive home afterward, but that she attempted to return the following day to receive the

injection when someone would be available to drive her. Finally, Employee testified that she had difficulties with physical therapy and that it made her symptoms worse. The trial court heard these explanations and found them to be reasonable. We cannot conclude the preponderance of the evidence weighs against the trial court's determinations in this regard.

**Conclusion**

For the forgoing reasons, the decision of the trial court awarding temporary disability benefits and medical benefits is affirmed, and its order is certified as final. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Nesreen Boutros | ) | Docket No. 2016-06-0418 |
| | ) | |
| v. | ) | State File No. 32833-2015 |
| | ) | |
| Amazon, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Kenneth M. Switzer, Chief Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 13th day of February, 2020.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Nesreen Boutros | | X | | X | 1039 Willoughby Station Blvd. Mt. Juliet, TN 37122 nesreen.boutros@yahoo.com |
| W. Troy Hart | | | | X | wth@mijs.com |
| Tiffany B. Sherrill | | | | X | tbsherrill@mijs.com |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov